# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3140

_____

United States of America ,                      *
                                                *
                        Appellee,               *
                                                *   Appeal from the United States
            v.                                  *   District Court for the
                                                *   Southern District of Iowa.
Timmie Durrell Cole, Sr.,                       *
                                                *
                                                *
                        Appellant.              *

_____

Submitted: May 12, 2004
Filed: August 25, 2004

_____

Before WOLLMAN, HEANEY, and MURPHY, Circuit Judges.

_____

HEANEY, Circuit Judge.

Timmie D. Cole, Sr. was convicted of possession of crack cocaine with intent to distribute and conspiracy to distribute crack cocaine. He received a mandatory life sentence. On appeal, he challenges the sufficiency of the evidence to sustain his conviction for possession of crack with intent to distribute. He further argues that the district court erred by failing to grant a mistrial and in denying his request for a missing witness jury instruction. For the reasons discussed below, we affirm.

# BACKGROUND

On January 4, 2002, Jaime Hollingshed, a government informant, purchased 13.2 grams of crack cocaine in a sale arranged by Cole. On the evening of January 31, 2002, Hollingshed contacted Cole again and was directed to an apartment where he purchased 6.1 grams of crack cocaine directly from Cole. Cole was arrested in a raid conducted pursuant to a search warrant at that apartment in the early morning hours of February 1, 2002. During the raid, law enforcement agents observed a large black arm in a blue short-sleeved t-shirt break out a living room window and jam something into the screen. A search of the apartment revealed 121.2 grams of cocaine base packaged in small bags caught in the screen of the broken window.

Agents questioned Kristina Harrington, a resident of the apartment, after the raid. On February 15, 2002, she wrote and notarized a letter claiming the drugs belonged to her and her sister. On April 3, 2002, Kristina Harrington signed a proffer agreement with the government, promising to tell the truth. She did not mention the letter to authorities before or after signing the proffer agreement. At Cole's trial, she testified that the statements in the letter were false, and that it was written under pressure from the mother of Cole's children.

During the trial, the prosecution called Walter Euring to testify about an alleged jail-house confession made to him by Cole. When asked when he met Cole, Euring stated that he had "first met Timmie [Cole] when he first got out of prison probably about '97, '96, somewhere around there." (Trial Tr. Vol. IV at 562.) This statement was made in violation of a pre-trial order excluding any reference to Cole's prior bad acts. Cole moved for a mistrial based on the violation and the statement's potential prejudicial effect on the jury. The district court[1] agreed that Euring's

---

[1] The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

testimony was a violation of the pre-trial order, but found it was not sufficiently prejudicial to warrant a mistrial. Instead, the district court offered to have that portion of Euring's statement stricken from the record, and to instruct the jury to disregard the statement. Cole, not wanting to emphasize the statement, chose not to have the jury so instructed.

Cole's charges stemmed from an ongoing investigation that began with the arrest of Tyrone Parrow. Although Parrow was listed as a prosecution witness, the government decided not to call Parrow to testify. Cole requested that the government explain the reason for the change, but citing trial strategy, the government declined to answer. Cole also decided not to call Parrow as a defense witness. At the end of the trial, Cole requested a missing witness jury instruction as to Parrow. The court denied the request to give the instruction, stating that it would be incorporating a defense argument into the jury instruction. The court, however, did allow Cole to present the missing witness issue during closing arguments.

Cole was convicted of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). He was sentenced to life in prison. On appeal, Cole contends that the evidence at trial was insufficient to establish actual or constructive possession of the drugs.[2] He further argues that the district court committed reversible error by failing to grant a mistrial, and by failing to properly instruct the jury as to the missing witness.

---

[2] Cole does not challenge the sufficiency of the evidence for his conspiracy to distribute cocaine conviction.

# ANALYSIS

## I. Sufficiency of the Evidence

When reviewing a jury verdict for sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, overturning it only if no reasonable jury could conclude that the government has proven all the elements beyond a reasonable doubt. United States v. Wilson, 103 F.3d 1402, 1406 (8th Cir. 1997). Cole argues that his conviction for possession with intent to distribute cannot stand because there was insufficient evidence to prove beyond a reasonable doubt that he actually or constructively possessed narcotics. To sustain a conviction under 21 U.S.C. § 841, the jury "must find that the evidence supports that (1) the defendant knowingly possessed [a controlled substance] and (2) that defendant intended to distribute the [controlled substance]." United States v. Wesley, 990 F.2d 360, 364-65 (8th Cir. 1993). Constructive possession is proven by showing that a defendant "had ownership, dominion, or control over the contraband itself, or dominion over the premises in which the contraband is concealed." United States v. Schubel, 912 F.2d 952, 955 (8th Cir. 1990).

We first dispose of Cole's argument that the witnesses at trial were not credible, and therefore their testimony was insufficient to support a finding of constructive possession. It is the task of the jury to evaluate the credibility of witnesses. United States v. Enriquez, 201 F.3d 1072, 1074 (8th Cir. 2000). Cole has provided no ground for us to deviate from this rule, thus we find his argument regarding witness credibility unavailing.

Cole next contends that since he did not live in the apartment, the drugs could not be his. After careful review of the record, we agree with the district court that Cole had ownership, dominion, and control over the narcotics found during the raid. Although Cole was not a legal resident of the apartment, possession can also be

demonstrated through the defendant's ownership, dominion, or control over the drugs. Schubel, 912 F.2d at 955. Harrington testified that on three or four occasions Cole brought baseball-sized chunks of crack cocaine to her apartment where he broke them apart and packaged them into smaller parcels. She also testified that on the evening of January 31, 2002, Cole used her living room to cut and package cocaine.

Jamie Hollingshed, who purchased crack from Cole on January 4 and January 31, 2002, corroborated Harrington's testimony about the events leading up to and during the raid. Hollingshed testified that he spoke with Cole four times on January 4, 2002, to arrange the first buy, which eventually took place at a location chosen by Cole. Hollingshed bought crack on the evening of January 31, 2002, a few hours before the early morning police raid at the apartment on February 1, 2002. The purchase was arranged through phone calls to Cole, who provided Hollingshed with directions to Harrington's apartment and was there when he arrived. Hollingshed described how Cole personally removed the drugs from the couch and handed him the quantity that he purchased. All of these events demonstrate that Cole had control over the drugs.

Cole next alleges that Special Federal Officer (SFO) McAuliffe and Officer Smull of the emergency services team gave testimony at trial that was contradictory to actual events during the raid. While we construe this as essentially an attack on the officer's credibility, which we do not consider, we are willing to address it to the extent Cole is arguing there is insufficient evidence to show possession and control of the narcotics. After reviewing the officers' testimony, we do not find their testimony to be inconsistent.

SFO McAuliffe testified that he saw a black arm with a blue-sleeved t-shirt stick something through a window of the apartment. Two officers on the entry team testified that Cole was the only male wearing a blue t-shirt in the living room of the

apartment at the time of the raid.[3]  The drugs seized in the raid were found stuck in a living room window screen.  One officer testified that he observed blood droplets on Cole's arm, and an  FBI Special Agent testified that Cole complained of cuts on his hand after the raid.

In short, the evidence presented at Cole's trial was more than sufficient to convict him of possession of crack cocaine with intent to distribute.  Accordingly, we will not disturb the jury verdict.

## II.  Mistrial

Cole next argues that the district court erred in failing to grant a mistrial when a government witness mentioned that Cole had been in prison, in violation of a pre-trial order excluding evidence of any of Cole's prior bad acts.  We review a trial court's denial of a motion for a mistrial for an abuse of discretion.  United States v. Flores, 73 F.3d 826, 830-31 (8th Cir. 1996).  The prejudicial effect of any improper testimony is determined by examining the context of the error and the strength of the evidence of the defendant's guilt.  United States v. Nelson, 984 F.2d 894, 897 (8th Cir. 1993).  "The district court '[i]s in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record.'"  Id. (Citations omitted.)

---

[3] Officer Smull entered the living room of the apartment only a few seconds after the first knock by the search team.  He testified that Cole was behind the couch, near the window where the drugs were found.  After being ordered to the floor, Cole moved toward Officer Smull and fell on the ground.  Cole argues that this testimony cannot be accurate because his large girth would not allow him to fit into the small area behind the couch.  The jury was presented with photographs and diagrams of the living room layout, and the jurors had the opportunity to evaluate this argument.  Accordingly, we find Cole's argument unpersuasive.

The district court granted a pre-trial order excluding evidence of any of Cole's prior bad acts. Cole moved for a mistrial when Euring mentioned that he met Cole when Cole was first released from prison. The district court denied the motion, but offered to instruct the jury to disregard the statement. Cole declined the instruction because he felt it would only emphasize the testimony.

In the face of the strong evidence and wide array of testimony against Cole, one objectionable statement by a prosecution witness was not sufficient to create prejudicial error. See, e.g., United States v. Flores, 73 F.3d 826, 831-32 (8th Cir. 1996) (holding that one statement from a witness referring to prior bad acts was not grounds for a mistrial when evaluated against the other evidence); United States v. Muza, 788 F.2d 1309, 1312-13 (8th Cir. 1986) (same). Therefore, we find that the district court did not err in refusing to grant a mistrial.

## III. Missing Witness Instruction

Cole finally argues that the trial court erred by refusing to give a missing witness instruction to the jury when the government decided not to call Parrow to testify. The decision to give a missing witness instruction is largely within the discretion of the trial court, United States v. Johnson, 562 F.2d 515, 517 (8th Cir. 1977), thus we review denial of a request for a missing witness instruction for an abuse of that discretion, United States v. Luvene, 245 F.3d 651, 655 (8th Cir. 2001). The purpose of a missing witness instruction is to notify the jury that the prosecution's decision not to call a witness that is peculiarly within the government's control "may give rise to the inference that the witness would have given testimony unfavorable to the government." Luvene, 245 F.3d 651, 655 (8th Cir. 2001). A missing witness instruction is generally not appropriate where the defense does not show that the government possesses the sole power to produce the witness. United States v. Martinez-Figueroa, 363 F.3d 679, 682 (8th Cir. 2004).

When Cole first learned that the government was not going to call Parrow as a witness, he was informed that it was a matter of trial strategy and that the government would not provide a reason for the decision. The government suggested that Cole could call Parrow as a defense witness, and Cole indicated that he had made a call to Parrow's attorney. In the end, Cole decided not to call Parrow to testify.

We find that Cole has not established that Parrow was unavailable as a defense witness. Accordingly, the district court did not abuse its discretion by refusing to provide a missing witness instruction to the jury.

## CONCLUSION

Finding each of Cole's claims of error unavailing, we affirm his conviction.

_____